PEARSON, J.

**FILED**

2011 SEP 30 PM 5:06

U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
YOUNGSTOWN

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KEYBANK NATIONAL ASSOCIATION, ) | CASE NO. 1:10CV02143 |
| ) | |
| Plaintiff, ) | |
| ) | JUDGE BENITA Y. PEARSON |
| v. ) | |
| ) | |
| FIRST AMERICAN TITLE INSURANCE ) | |
| CO., ) | |
| ) | **MEMORANDUM AND ORDER OF** |
| Defendant. ) | **OPINION** (Resolving ECF No. 12) |

Before the Court is Defendant First American Title Insurance Company's ("First American") motion to dismiss Plaintiff KeyBank National Association's ("KeyBank" or "Plaintiff") complaint alleging breach of contract and bad faith pursuant to Fed. R. Civ. P. 12(b)(6) and KeyBank's declaratory judgment claim pursuant to Fed. R. Civ. P. 12(b)(1). ECF No. 12.

For the reasons discussed below, the Court denies First American's motion to dismiss.

### I. Background

KeyBank is in the business of, among other things, making home equity loans to consumers secured by mortgage liens on real property. ECF No. 1 at 3. When deciding whether to make a home equity loan to a consumer, KeyBank assesses a borrower's credit and collateral. ECF No. 1 at 3. As to credit, KeyBank assesses whether the borrower appears to have the ability to repay the loan, based on criteria such as sources of income and a credit score. ECF No. 1 at 4. As to collateral, KeyBank assesses whether the borrower is offering to give KeyBank a valuable,

(1:10CV02143)

collectible and secured interest in real property.[1] ECF No. 1 at 4. In order to insure that the borrower's ownership interest in the collateral is properly documented and sufficient to secure the loan, KeyBank would order a traditional title search. ECF No. 1 at 4. A traditional title search is come costly and time consuming to order, review, and obtain. ECF No. 1 at 4.

In 2003-2004, First American created, marketed, and sold to KeyBank a "product" that combined information reporting services and insurance coverage in one package. ECF No. 1 at 4. The product, which First American dubbed "the Fact Program" and later the "FACT XL Program," was marketed to Keybank as a for the KeyBank's lending personnel to obtain nearly instantaneous information about the proposed collateral property allowing KeyBank's lending personnel to make quicker lending decisions. ECF No. 1 at 4-5. The information was not as reliable or complete; thus, First American provided insurance to ameliorate the increased risks. ECF No. 1 at 5. Specifically, First American would insure Key Bank to the extent that it made a home equity loan in which undiscovered title or lien problems at closing later impaired KeyBank's interest in the collateral. ECF No. 1 at 5. In exchange for faster title reports and lien protection, KeyBank would pay First American premiums and service fees based on a tiered-schedule depending on the size of the loan and the location of the property. ECF No. 1 at 5.

In 2004, KeyBank and First American entered into a Service Agreement that described

---

[1] To ensure that the collateral is sufficient to offset KeyBank's risks in issuing the loan, KeyBank must understand various information such as: who has title to the property and whether all owners signed the proper documentation conveying an enforceable lien to KeyBank (vesting risk); whether any other creditors have pre-existing liens on the property that would have priority over KeyBank's intended mortgage lien position (lien priority risk); and whether the legal description of the property is sufficient to put other creditors on notice of KeyBank's mortgage so later creditors cannot claim priority (recording error risk). ECF No. 1 at 4.

(1:10CV02143)

the parties' specific duties and the prerequisites to obtaining coverage for loans made under the FACT program. ECF No. 1 at 6-7. The 2004 Service Agreement provides that KeyBank determines, in its sole discretion, whether to make a loan to the proposed borrower, and coverage is dependent upon KeyBank ordering a FACT Title Report from First American. ECF No. 1 at 7.

As part of the FACT program, First American and KeyBank entered into a new Service Agreement in 2008 and described the parties' specific duties and prerequisites to obtaining insurance coverage for loans going forward. ECF No. 1 at 8. The 2008 Service Agreement replaced the 2004 Service Agreement. ECF No. 1 at 8.

In 2009, First American entered into a new Service Agreement that replaced the 2008 Service Agreement and described the parties' specific duties and prerequisites to obtaining insurance coverage for loans going forward. ECF No. 1 at 9.

According to the complaint, First American has refused to pay most of KeyBank's insurance claims as required under the polices and certificates of insurance, and has failed to timely issue a coverage decision regarding numerous other claims by KeyBank. ECF No. 1 at 11. To date, First American has denied over ninety percent of KeyBank's claims totaling millions of dollars in losses. ECF No. 1 at 11.

KeyBank filed the instant cause of action alleging declaratory judgment, breach of contract, and bad faith. ECF No. 1 at 20-24. First American filed a motion to dismiss KeyBank's breach of contract and bad faith claims pursuant to Fed. R. Civ. P. 12(b)(6) and KeyBank's declaratory judgment claim pursuant to Fed. R. Civ. P. 12(b)(1). ECF No. 12. In response, KeyBank filed an opposition, to which First American replied. ECF Nos. 14, 16.

3

(1:10CV02143)

## II. Discussion and Legal Standard

### A. Rule 12(b)(6)

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must take all well-pleaded allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). A claim survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 129 S.Ct. at 1950. A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 555-56.

To determine whether a claim should proceed, the Supreme Court has set forth a legal "plausibility standard" to assess whether the facts convincingly suggest actionable conduct, rather than merely describing conduct that actually occurred. *Twombly*, 550 U.S. at 556 n.3. Applying this standard, district court judges should weigh the facts and determine, when necessary, whether they are sufficient to "nudge [the] claims across the line from conceivable to plausible" based on their "judicial experience and common sense." *Twombly*, 550 at 570; *Iqbal*, 129 S. Ct. at 1950. A suit may proceed as long as a plaintiff's complaint crosses that threshold. *Twombly*, 550 at 570.

4

(1:10CV02143)

According to the legal standard and the District Court Judge's "judicial experience and common sense," plausible claims for relief have been shown in KeyBank's complaint. ECF No. 1. KeyBank has nudged its claims for breach of contract and bad faith settlement practices across the line from conceivable to plausible by asserting facts that substantiate each claim and suggest actionable conduct. ECF No. 1. KeyBank's complaint contains "enough" to give First American fair notice of both the complaint's claims and the grounds for those claims; and, it is premature, at this stage, to dismiss KeyBank's claims pending further factual development of the record regarding the alleged 160 separate real estate transactions. See *Arlington Video Productions, Inc. v. Fifth Third Bancorp.*, Case No. 2:08CV122, 2008 WL 1990355, at *6 (S.D. Ohio May 1, 2008); ECF No. 12 at 3. As a result of this prematurity, the Court orders KeyBank to serve and file an amended complaint not later than 21 days from the date of this Order that sets out and simplifies the 160 real estate transactions at issue. The amended complaint should separately address each real estate transaction by: (1) identifying what contract claims were breached; (2) how those claims were breached; and (3) detailing why reimbursement is owed.

**B. Rule 12(b)(1)**

The legal test for assessing whether a lawsuit challenged under Fed. R. Civ. P. 12(b)(1) may continue or be dismissed depends on the type of challenge posed. The Sixth Circuit has previously noted that "Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction generally come in two varieties: a facial attack or a factual attack." *O'Bryan v. Holy See*, 556 F.3d 361, 375-76 (6th Cir. 2009) (internal citations and quotations omitted). "A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the

(1:10CV02143)

pleading." *Gentek Bldg. Prods. v. Sherwin-Williams Claims*, 491 F.3d 320, 330 (6th Cir.2007) (citing *Ohio Nat'l Life Ins. Co. v. U.S.*, 922 F.2d 320, 325 (6th Cir.1990)). And, "[w]hen reviewing a facial attack, a district court takes the allegations in the complaint as true . . . ." *Gentek*, 491 F.3d at 330 (internal citations omitted). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir.2005).

In its motion to dismiss, First American argues that KeyBank seeks declaratory relief on matters where there is no actual controversy, but rather speculation regarding future claims under the FACT program. ECF No. 12 at 13. First American further argues that KeyBank improperly asks this Court to make sweeping declarations based on "the scope of coverage afforded under the insurance policies related to First American's FACT Program and the obligations of the parties with respect to KeyBank's claims asserted under those policies and claims that KeyBank may reasonably be expected to assert in the future under those policies." ECF Nos. 1 at 20; 12 at 14.

In opposition, KeyBank alleges that it has an actual controversy with First American regarding the FACT Master Policy. ECF No. 14 at 4. KeyBank contends that because KeyBank may suffer other insurance losses and submit more claims in the future, KeyBank is merely seeking a declaration of the parties' ongoing contractual rights and obligations under the FACT Master Policy. ECF No. 14 at 4. KeyBank claims that its declaratory judgment action is based upon a real and substantial controversy because KeyBank has alleged that over 96 of its claims have actually been denied so far, and 46 additional submitted claims are currently "pending," and

(1:10CV02143)

that more claims are likely to be submitted and denied in the future. ECF No. 14 at 14-15.

The Sixth Circuit has held that a "declaratory judgment generally is sought before a completed injury-in-fact has occurred . . . . Nevertheless, when seeking declaratory or injunctive relief, the plaintiff must demonstrate actual present harm or a significant possibility of future harm to justify pre-enforcement relief." *Peoples Rights Org., Inc. v. City of Columbus*, 152 F.3d 522, 527 (6th Cir. 1998) (internal citations omitted). The Sixth Circuit explained that "it is clear that an individual does not have to await the consummation of threatened injury to obtain preventive relief . . . . Rather, if the injury is certainly impending, that is sufficient." *Id*. (citing *Babbitt v. United Farm Workers Union*, 442 U.S. 289, 298 (1979)).

Applying the standards under Fed. R. Civ. P. 12(b)(1) and in light of the principles articulated above, the Court finds that KeyBank has pleaded an actual controversy sufficient to survive dismissal. KeyBank has pleaded actual harm, for example, in the following allegations:

> (1) Since 2007, KeyBank has submitted over 160 claims seeking reimbursement for covered losses under the FACT Master Policy. (ECF No. 1 at 11, ¶ 51).
>
> (2) First American has refused to pay most of KeyBank's claims as required under the policies and certificates of insurance and has failed to timely issue a coverage decision regarding numerous other claims by KeyBank. As of September 2010, First American has denied at least 96 claims, and an additional 46 claims have been 'pending' for at least two years, with some pending for at least 6 years. These denied and pending claims represent millions in losses sustained by KeyBank. (ECF No. 1 at 11, ¶ 52).

KeyBank has also pleaded the significant possibility of future harm, for example, by alleging:

> There is every reason to be concerned that First American's improper conduct will continue with respect to future claims submitted by KeyBank under the policies . . . . In other words, covered home equity loans may go into default in the future, at which point defects in the collateral may be discovered for the first time, and, if First American continues to act in the future as it has in the past, First American will improperly deny coverage. ECF No. 1 at 12, ¶ 56.

(1:10CV02143)

Based upon the foregoing allegations, the Court finds that KeyBank seeks declaratory relief on an actual case or controversy. First American's motion to dismiss KeyBank's declaratory judgment claim is, therefore, denied.

### III. Conclusion

For the aforementioned reasons, the Court denies Defendant First American Title Insurance Company's motion to dismiss in its entirety. ECF No. 12. The amended complaint to be filed not later than 21 days from the date of this Order should allege facts that separately support each real estate transaction and insurance claim by identifying "what, how, and why" as to each of KeyBank's 160 claims seeking reimbursement for losses under the FACT Master Policy.

IT IS SO ORDERED.

  September 30, 2011  
Date

Benita Y. Pearson  
United States District Judge